**UNITED STATES ex rel. SKINNER v.
ROBINSON, Warden.**

Civ. No. 722–D.

United States District Court
E. D. Illinois.

May 13, 1952.

Donald L. Merlie, Danville, Ill., for petitioner.

154

Ivan A. Elliott, Atty. Gen., State of Illinois, and Harry L. Pate, Asst. Atty. Gen., Springfield, Ill., for respondent.

PLATT, District Judge.

Petitioner seeks to obtain his release from the Menard Branch of the Illinois State Penitentiary by a writ of habeas corpus in forma pauperis. By earlier orders of this court leave was granted to file the amended petition, respondent was required to show cause why the writ should not issue, and Attorney Donald L. Merlie was appointed to represent petitioner. Respondent first filed a motion to dismiss, which was withdrawn without objection after a hearing before the court, and subsequently filed a return herein. Briefs have been filed. The court's decision has been delayed at the request of petitioner's counsel for additional time in which to submit his brief.

■ The only substantial ground urged in support of the petition is that petitioner was not properly represented by competent counsel at his trial and was thereby denied due process of law as required by the Fourteenth Amendment to the Constitution of the United States. Inasmuch as he was charged with a capital offense there can be no question that he was entitled to such representation at all stages of the proceedings. Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Potter v. Dowd, 7 Cir., 146 F.2d 244. Article II, Section 9 of the Constitution of the State of Illinois, S.H.A. and Section 730 of Chapter 38, Illinois Revised Statutes, also provide for the right to counsel in capital cases. See People v. Butler, 406 Ill. 189, 92 N.E.2d 752.

A brief résumé of the proceedings resulting in petitioner's present incarceration is necessary. He was indicted on February 12, 1935, by the Grand Jury of Lee County, Illinois, upon the charge of murder. On February 13 the Circuit Court in that county appointed Messrs. Clyde Smith and Harold E. Nimz, attorneys at the bar of Lee County, as counsel to defend him. Mr. Smith was a distinguished member of the Lee County bar who had been practicing since 1889. Mr. Nimz was a young lawyer of some ability. Petitioner was duly arraigned in open court and through his attorneys made a motion, which was denied on February 22, to quash the indictment. A motion for a continuance was allowed after Skinner had entered his plea of not guilty. The trial began on April 15, 1935, before the Honorable Harry Edwards, with Attorney Nimz taking the lead on voir dire and the cross-examination of the State's witnesses. On the afternoon of April 18 Nimz became "extremely nervous" and the court was adjourned until the next day. Nimz was adjudged insane and committed to the State hospital on the 19th. Mr. Smith, who had been present in the courtroom at all times, completed the case alone. On April 20 the jury returned a verdict finding the defendant guilty of murder and fixing his punishment in the penitentiary for his natural life. Motions for a new trial and in arrest of judgment were heard and overruled on April 22, 1935, and the defendant was sentenced on the verdict for the term of his natural life. On writ of error to the Supreme Court of Illinois on the common law record the judgment was affirmed. People v. Skinner, 397 Ill. 273, 73 N.E.2d 427.

■ The only issue presented by these facts is whether petitioner is entitled to a hearing on the question of whether or not he was represented by competent counsel at all stages of the trail. He has already had two hearings in State courts on this very question. The law is well established that while the doctrine of res judicata does not apply to habeas corpus cases,[1] a federal court should not ordinarily re-examine questions which have been considered and adjudicated on the merits by the courts of the State. Ex parte Hawk, 321 U.S. 114, 118, 64 S.Ct. 448, 88 L.Ed. 572; House v. Mayo, 324 U.S. 42, 48, 65 S.Ct. 517, 89 L.Ed. 739. In Salinger v. Loisel, 265 U.S. 224, at page 231, 44 S.Ct. 519, 68

1. Darr v. Burford, 339 U.S. 200, 214, 70 S.Ct. 587, 94 L.Ed. 761.

L.Ed. 989, the Supreme Court of the United States laid down the rule that each application for a writ of habeas corpus must be disposed of in the exercise of sound discretion guided and controlled by a consideration of whatever has a rational bearing on the propriety of the discharge sought.

Petitioner's first hearing was held on the 12th day of October, 1949, on a petition for a writ of habeas corpus filed in the Circuit Court of Randolph County. He was represented by court-appointed counsel. Skinner testified, as did other witnesses in his behalf. The State's Attorney who had prosecuted him, the court reporter, and the sheriff and deputy sheriff, both of whom were present during the course of the original trial, also testified. The Honorable Ralph L. Maxwell—now Mr. Justice Maxwell of the Illinois Supreme Court—made findings that petitioner was given a fair and impartial trial and was represented at all times by competent counsel. It is alleged that the United States Supreme Court denied certiorari to review this court's judgment.

A petition for relief under the Illinois Post-Conviction Hearing Act, chapter 38, Ill.Rev.Stat. § 826 ff., was filed on May 3, 1950 in the Circuit Court of Lee County. On the same day counsel were appointed for petitioner at his request. A hearing was held on the petition before the Honorable George C. Dixon on June 12, 1950. Witnesses for both petitioner and respondent testified. Judge Dixon also found that Skinner had been given an impartial trial and was represented by competent counsel and entered an order denying relief. The Supreme Court of Illinois denied a petition for a writ of error and again certiorari was denied by the United States Supreme Court.

In each of these hearings petitioner could have obtained relief had he been able to prove his allegations. The Illinois Supreme Court has held in three cases that when the judgment is void relief can be obtained by a petition for a writ of habeas corpus. People v. Loftus, 400 Ill. 432, 81 N.E.2d 495; People v. Shoffner,

400 Ill. 174, 79 N.E.2d 200; People v. Wilson, 399 Ill. 437, 78 N.E.2d 514. In dicta in these cases the court declared that a writ of habeas corpus was the proper remedy to determine whether a defendant was properly represented by counsel, and thereby accorded due process of law. The difficulty in Illinois has been that no appeal is permitted from a decision of the Circuit Court upon a petition for a writ of habeas corpus. People v. Loftus, supra. The remedy is by certiorari to the United States Supreme Court. Some circuit courts in Illinois have denied a hearing on such petitions and on certiorari the Supreme Court has occasionally found it necessary to remand the cause for a due and proper hearing by the courts of the State. See, for example, Marino v. Ragen, 332 U.S. 561, 68 S.Ct. 240, 92 L.Ed. 170.

The Post-Conviction Hearing Act, chapter 38, Ill.Rev.Stat., § 826, specifically provides for relief where a petitioner proves his allegations that:

"* * * there was a substantial denial of his rights under the Constitution of the United States or of the State of Illinois or both * * *."

And in People v. Jennings, 411 Ill. 21, 102 N.E.2d 824, it was held that the conviction of a prisoner could be set aside where the petitioner's State or Federal constitutional rights had been violated.

A complete transcript of the proceedings in each of these hearings was attached to the return of the respondent herein. Upon a careful examination of these transcripts the court finds that Skinner was given a full and complete opportunity to present the same contentions which he raises here. It is thus clear that petitioner has had two full and fair hearings in forums which might have afforded him relief by way of discharge from respondent's custody. The Supreme Court of the United States did not see fit to review the findings of those courts. This court must and does give proper weight to those findings. Gault v. Burford, 10 Cir., 173 F.2d 813 and cases cited therein. There is no suggestion that further evidence could be produced at this

time. Unfortunately Judge Edwards and Attorneys Nimz and Smith have since passed away. There is nothing in the petition or record to indicate that a different result would be reached upon another hearing in this court. It follows that this court must, in the exercise of its sound discretion, deny the request for a hearing and dismiss the petition.

In view of the unique and unfortunate circumstances of petitioner's trial this court has not been content to rest its judgment solely on the sound legal principles set forth above. At the court's request the Attorney General of the State of Illinois, by proper motion to the Illinois Supreme Court and without objection by petitioner's counsel, who was given due notice of the motion, procured for this court's examination the trial proceedings in the original prosecution. The record is authenticated by Mrs. Anna M. Moore, the official court reporter, and also by the Honorable George C. Dixon, successor to the judge who presided at the trial, on September 9, 1944.[2] The trial transcript was examined to find if there was any basis for petitioner's allegations that:

"Attorney Clyde Smith a veteran Attorney of the Lee county bar * * did not participate in the trial.

"During the course of the trial, Attorney Nimz became nervous and confused, And requested the Court to direct Attorney Smith to aid him. Page 253 of records * * * Smith declines to aid Nimz states 'I would rather that he did it.', Judge Harry Edwards remarked and was made part of the records, 'There is a life here at stake and not being properly defended.'"

Page 253 of the transcript is set out below. It records a colloquy which took place out of the presence of the jury on the 18th of April, 1935:

"(Jury withdrawn during interrogation of witness before court.)

"By the Court: You may inquire Mr. Nimz the circumstances under which any statements were made.

"Mr. Nimz: Your honor, right now, I don't understand what has gone on since this witness has taken the stand, and I want time to rest, so that I can understand what has gone on, and so I can make a valid objection, if there are any to be made. I ask that we recess until three o'clock.

"By the Court: There are other counsel present for the defendant and there is no occasion for such an action. If you are weary you have an able associate who can help you. Mr. Smith, would you participate in this examination?

"Mr. Smith: I think Mr. Nimz is better familiarized with the subject than I am. I would prefer if he would proceed with it, if he will.

"By the Court: I must require that you proceed.

"Mr. Nimz: I will proceed your honor. I take exception to the ruling of the court.

"By the Court: I am giving you an opportunity to ascertain whether any of the statements made by the defendant to this witness were made under threats, or compulsion, or promises of any kind, and to ascertain whether or not they are competent. I am giving you that opportunity before I permit him to answer the question.

"Mr. Nimz: I want to make an objection to the proceedings going on at this time. We want a recess.

"By the Court: I have overruled your motion.

"By the Court: I am giving you this opportunity—if you don't care to avail yourself of it, we will have the jury come in and let the witness answer.

"Mr. Nimz: All right."

2. Because it was not properly certified within the statutory period this transcript did not qualify as a bill of exceptions in People v. Skinner, 397 Ill. 273, 73 N.E.2d 427. Supreme Court Rule 70a, chapter 110, Ill.Rev.Stat. § 259.70A.

The entire transcript has been carefully examined in an effort to locate the remark attributed by petitioner to Judge Edwards to the effect that "There is a life here at stake and not being properly defended." No such remark can be found anywhere in the record. (It is also to be noted that none of the witnesses at either of the State court hearings, other than Skinner himself, testified to having heard the Judge make such a remark.) The transcript also refutes petitioner's allegations that Mr. Smith "did not participate in the trial." In the entire transcript there is not an iota of evidence to indicate that Smith was at any time absent from the courtroom or unwilling to step in should he be needed; indeed, testimony in the State court hearings indicates that he constantly advised with Nimz. It is undisputed that he left this life with the reputation of an able, honest and resourceful lawyer—a reputation such as every lawyer tries to establish.

Further evidence of Judge Edward's desire to protect petitioner's right to a fair trial is indicated by his order that a continuing transcript of the proceedings be furnished the defendant as the trial progressed so that he would not be unduly handicapped by his deafness.

In Darr v. Burford, 339 U.S. 200, at page 218, 70 S.Ct. 587, at page 597, 94 L.Ed. 761, the Supreme Court has said:

"A conviction after public trial in a state court by verdict or plea of guilty places the burden on the accused to allege and prove primary facts, not inferences, that show, notwithstanding the strong presumption of constitutional regularity in state judicial proceedings, that in his prosecution the state so departed from constitutional requirements as to justify a federal court's intervention to protect the rights of the accused."

■ Upon an examination of the amended petition, the return, the record of the trial proceedings and the other exhibits submitted by petitioner, there can be no question that Skinner was convicted by a public trial in which he was properly represented by competent counsel, found guilty by a fair and impartial jury and sentenced by an able judge. Unquestionably it was the duty of his two attorneys to properly defend petitioner, but from the entire record it is clear that he was given a vigorous defense. Perhaps some lawyer other than Smith would have made a motion for a mistrial upon the illness of Mr. Nimz, but whether a second trial would have given Skinner a more favorable result cannot be known. Perhaps Smith did fail to call certain witnesses which Skinner wished to have called, as alleged, yet even this is not evidence of incompetence. No lawyer is infallible in his judgment. In U. S. ex rel. Feeley v. Ragen, 7 Cir., 166 F.2d 976, at page 980, Judge Minton—now Mr. Justice Minton of the United States Supreme Court—said:

"The best of counsel makes mistakes. His mistakes, although indicative of lack of skill or even incompetency, will not vitiate the trial unless on the whole the representation is of such low caliber as to amount to no representation and to reduce the trial to a farce. * * *

"Petitions challenging the competency of counsel, especially years after the conviction, must clearly allege such a factual situation which if established by competent evidence would show the representation of counsel was such as to reduce the trial to a farce or a sham."

In U. S. ex rel. Weber v. Ragen, 7 Cir., 176 F.2d 579, at page 586, the same judge said:

"As to the requirement under the Fourteenth Amendment, the services of counsel meet the requirements of the due process clause when he is a member in good standing at the bar, gives his client his complete loyalty, serves him in good faith to the best of his ability, and his service is of such character as to preserve the essential integrity of the proceedings as a trial in a court of justice. He is not required to be infallible. We know

**158**

that some good lawyer gets beat in every law suit. He made some mistakes. The printed opinions that line the walls in our offices bear mute testimony to that fact. His client is entitled to a fair trial, not a perfect one."

Pierce v. Hudspeth, 10 Cir., 126 F.2d 337, involved a factual situation remarkably parallel to that in the instant case. There, as here, the defendant was represented by two counsel, one of whom was allegedly mentally incompetent during the course of the trial. The court there held that a writ of habeas corpus should not issue because even if petitioner's allegations could have been proven, nevertheless the presence of the other lawyer was sufficient to give him adequate protection. The court also held that the lawyer's refusal to challenge a juror and failure to recall a witness, even if erroneous, did not deprive the defendant of proper representation. Competency of counsel is discussed in other cases which bear out the conclusion that the petitioner herein was properly represented. See Achtien v. Dowd, 7 Cir., 117 F.2d 989; Andrews v. Robertson, 5 Cir., 145 F.2d 101; Coates v. Lawrence, D.C., 46 F.Supp. 414, affirmed, 5 Cir., 131 F.2d 110.

It is the finding of the court that there is no evidence in the record, nor is there any possibility that evidence will be produced, from which it could be inferred that Mr. Nimz was not mentally competent at all times during his presence in the courtroom. Furthermore, there is no evidence in the record, nor is there any possibility that evidence will be produced, from which it could be inferred that Mr. Smith was absent from the courtroom or unwilling to take over the active defense of the case should he feel that his services were needed. This court would abuse its discretion if it were to hold further hearings upon this petition.

The writ of habeas corpus is therefore denied, and it is ordered that the petition be and the same hereby is dismissed.